IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| CONNIE C.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:18-CV-169-BQ |
| | § | ECF |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Connie C. seeks judicial review under 42 U.S.C. § 405(g) of the Acting Social Security Commissioner's decision denying her application for disability insurance benefits (DIB). The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. All parties did not consent to jurisdiction by the magistrate judge and, in accordance with the order of transfer, the undersigned now files this Report and recommends that the United States District Judge reverse the Commissioner's decision and remand the case for further proceedings consistent with this order.

**I.     Statement of the Case**

Plaintiff filed an application for DIB on December 1, 2014, alleging disability beginning September 30, 2013. Tr. 98, 173. The Social Security Administration (SSA) initially denied her application on March 9, 2015, and again upon reconsideration on September 22, 2015. Tr. 115, 120. Plaintiff subsequently requested a hearing, and on August 31, 2016, she appeared and testified

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by her first name and last initial.

1

before an administrative law judge (ALJ). Tr. 65. An attorney represented Plaintiff at the hearing. *Id.*

The ALJ determined on November 17, 2016, that Plaintiff is not disabled. Tr. 44–56. The Appeals Council denied review of the ALJ's decision on November 29, 2017. Tr. 23–28. Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

## II.   Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgement for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2012). In making a disability determination, the Commissioner conducts a five-step sequential evaluation process to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity (RFC), is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Where a claimant is found to be not disabled at any step, however, the fact finder must consider the next level of the sequential evaluation. 20 C.F.R. § 404.1520(a); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

At the first four steps in the analysis, the claimant bears the burden of proving her disability by establishing a physical or mental impairment. *Greenspan*, 38 F.3d at 236. Once established, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III. Factual Background

Plaintiff claims she became disabled on September 30, 2013, at age sixty-one due to multiple health issues. *See* Tr. 46, 54, 200–04. She has a high school education, and last worked as a secretary. Tr. 54, 81, 214–15. Plaintiff lives alone, cares for herself, and is able to walk short

distances and drive occasionally, but has difficulty performing even basic household chores due to her health. *See* Tr. 217–24.

The ALJ found that Plaintiff has severe impairments consisting of the following: degenerative disc disease of the lumbar spine; lumbosacral and cervical radiculitis; cervical stenosis; cervical disc bulge; obesity; thyroid disorder; fatigue; malaise; degenerative joint disease with knee pain; right knee replacement by history; osteoarthritis left acromioclavicular joint; bilateral shoulder pain; osteoarthritis and vitamin D deficiency; left distal radius fracture; chronic pain syndrome; myofascial pain syndrome; fibromyalgia; ankle pain secondary to chronic ankle strain/sprain; and peroneal tendonitis. Tr. 46. The ALJ further determined that, beginning August 2015, Plaintiff also suffered from severe mental impairments, including somatic symptom disorder, major depressive disorder, and generalized anxiety disorder. *Id.* The ALJ concluded that Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(b), with certain physical and mental limitations; specifically, the ALJ found that "[b]eginning August 2015, [Plaintiff] is further limited to jobs that would require understanding, remembering, and carrying out detailed tasks, but not complex tasks."[2] Tr. 48. At step four, the ALJ determined that Plaintiff could perform past relevant work through July 2015, but as of August 2015 is unable to perform any past relevant work; however, relying on the testimony of a vocational expert (VE), the ALJ concluded at step five Plaintiff could perform the jobs of receptionist, insurance clerk, and rehab clerk, which exist in significant numbers in the national economy. Tr. 53–55. Accordingly, the ALJ determined that Plaintiff is not disabled as defined in 20 C.F.R. § 404.1520(f). Tr. 55.

---

[2] As discussed in more detail below, the ALJ did not include any mental limitations in her RFC determination for the time between the alleged onset date of September 30, 2013, and August 2015. The restriction to "jobs that would require understanding, remembering, and carrying out detailed tasks, but not complex tasks" as of August 2015 is the only mental limitation the ALJ included in her RFC determination. Tr. 48.

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's mental RFC determination is not supported by substantial evidence; (2) the ALJ's step 5 determination is flawed because the ALJ posed an incomplete hypothetical question to the VE; and (3) the ALJ improperly interpreted a 2014 Functional Capacity Evaluation (FCE) in making her RFC determination regarding Plaintiff's ability to use her hands. Pl.'s Opening Br., at 1 (ECF No. 12). The undersigned finds that Plaintiff's first point of error has merit, and therefore recommends the court remand the case for further administrative proceedings.[3]

## IV. Discussion

### A. The Parties' Positions

Plaintiff asserts that the ALJ's mental RFC determination[4] is not supported by substantial evidence because there is no medical opinion evidence in the record concerning the effect Plaintiff's severe mental impairments have on her ability to work. *Id.* at 12–16. Plaintiff argues that, rather than ordering a consultative examination by a medical expert, the ALJ effectively used her own lay opinion to determine the impact Plaintiff's mental impairments have on her ability to work, in violation of the Fifth Circuit's holding in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). *Id.*

In response, the Commissioner argues that the "mild limitations" found by the ALJ regarding Plaintiff's mental condition, i.e., limitations in concentration, persistence, or pace, and restriction to detailed but not complex tasks, properly incorporate Plaintiff's mental impairments as determined by the ALJ. Def.'s Br., at 3–4 (ECF No. 14).[5] The Commissioner also dismisses

---

[3] In recommending that the district court remand this case for further proceedings, the undersigned does not suggest that Plaintiff qualifies for, or that the ALJ should make, a disability finding.

[4] Plaintiff's brief focuses on the ALJ's mental RFC determination, and while Plaintiff "disagrees with the physical RFC determination, she is not disputing the determination." Pl.'s Opening Br., at 11. The court thus addresses only the propriety of the ALJ's mental RFC determination.

[5] Through this argument, the Commissioner essentially argues that because the cited cases have "routinely" found that an RFC containing a restriction to detailed, but not complex, tasks properly incorporates moderate limitations in

Plaintiff's "procedural" argument under *Ripley*, alleging that the lack of medical opinion evidence supporting the ALJ's mental RFC determination does not require "automatic remand" because other substantial evidence in the record supports the finding. *Id.* at 4–6. Following this rationale, the Commissioner further reasons that because the medical record contains no opinion evidence of work-related limitations resulting from Plaintiff's mental impairments—pointing specifically to reports of two physicians who evaluated Plaintiff's medical records and found no such limitations—substantial evidence would support not only the mild-limitation mental RFC found by the ALJ but also one with no mental limitations whatsoever. *Id.* at 6–9. In other words, despite the absence of a medical opinion defining work restrictions or limitations based on the mental impairments identified, the ALJ gave Plaintiff the benefit of the doubt by including some degree of work restriction, even where the record supports no such restriction at all. *Id.*

---

concentration, persistence, or pace, this court must affirm the ALJ's similar determination. *Id.* The undersigned finds this argument unavailing for at least two reasons. First, many of the decisions are distinguishable. *See, e.g., Coontz v. Berryhill*, No. 4:17-CV-302-A, 2018 WL 3387325, at *2–5 (N.D. Tex. July 11, 2018) (upholding a challenged VE question based on incorporated limitations, but not in the context of a *Ripley* challenge); *Wanzer v. Colvin*, No. 4:15-cv-003-Y-BL, 2016 WL 7742739, at *7–8 (N.D. Tex. Feb. 9, 2016) (upholding a challenged VE question where the question tracked the language of the RFC finding rather than the listing-stage finding, but only after concluding that substantial evidence supported both findings); *Holmes v. Astrue*, No. 3:11–CV–2634–G (BH), 2013 WL 638830, at *15–16 (N.D. Tex. Jan. 25, 2013) (holding that a listing-stage finding that plaintiff had "moderate restriction in maintaining concentration, persistence, or pace" and an RFC finding that plaintiff "could understand, remember, and carry out detailed but not complex instructions" were not incompatible); *Moore v. Astrue*, No. 1:08-CV-020-C, 2009 WL 804133, at *5–6 (N.D. Tex. Mar. 26, 2009) (affirming—in the context of a challenge to a VE question—the propriety of the ALJ incorporating a listing determination into the RFC determination, but not in the context of a *Ripley* challenge).

Second, even assuming some of the cases generally support the stated proposition, the holdings nevertheless provide no guidance for resolving the ultimate issue presented herein: does the administrative record contain substantial evidence, i.e., proper medical opinion testimony, supporting the ALJ's RFC determination? *See, e.g., Cobb v. Berryhill*, No. 4:17-CV-00106-A, 2017 WL 6492078, at *6 (N.D. Tex. Nov. 29, 2017), *R. & R. adopted*, 2017 WL 6493237 (N.D. Tex. Dec. 15, 2017) (upholding ALJ's incorporation of moderate deficits in concentration, persistence, and pace into RFC limiting claimant to understanding, remembering, and carrying out detailed but not complex instructions where "the ALJ *properly discussed the evidence in the record* in making the RFC determination . . . [and] . . . incorporate[d] limitations into the RFC assessment *that were most supported by the record* . . .") (emphasis added); *Williams v. Colvin*, 4:14-CV-114-BJ, 2015 WL 1288348, at *6 (N.D. Tex. Mar. 20, 2015) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)) (affirming the ALJ's decision to use RFC language in a VE question "[b]ecause there is substantial evidence in the record that supports the ALJ's evaluation of [plaintiff's] mental impairments as well as her mental RFC assessment").

Plaintiff argues in her Reply that the Commissioner, despite identifying evidence the ALJ used to make her decision, nevertheless fails to point to any medical opinion evidence by a treating or examining physician regarding the impact of Plaintiff's mental impairments on her ability to work. Pl.'s Reply, at 1–2 (ECF No. 15). Plaintiff also contends that the Commissioner misconstrues precedent in arguing that the ALJ did not violate *Ripley* by making a mental RFC finding without support from medical opinion evidence, and that her testimony, if given weight, would be competent evidence to support a finding that she is disabled. *Id.* at 3–11.

In sum, the Commissioner's key argument is that the record evidence, including reports from non-examining state-agency medical consultants (SAMCs), a separate consultative examination conducted in August 2015, and treatment notes from Plaintiff's treating psychologist, constitutes substantial evidence to support the ALJ's mental RFC determination. Def.'s Br., at 6–11. As discussed in more detail below, none of the cited evidence supports the ALJ's mental RFC determination because it does not include any medical opinion by a treating or examining physician concerning the impact Plaintiff's severe mental impairments have on her ability to work. *See Ripley*, 67 F.3d at 557 (holding that "the ALJ's conclusion was not supported by substantial evidence" because "the ALJ failed to develop the record fully and fairly when he concluded that [plaintiff] was capable of performing sedentary work, even though there was no medical testimony supporting this conclusion"). Based on a thorough review of the administrative record, the undersigned finds that substantial evidence does not support the ALJ's mental RFC determination, and recommends that the District Judge reverse the ALJ's decision and remand for reconsideration.

B. The RFC and *Ripley*

The RFC is an assessment of a claimant's ability to perform work "on a regular and continuing basis." *See* 20 C.F.R. § 404.1545(a) (2017); *see also* Social Security Ruling (SSR) 96-

8p, 1996 WL 374184, at *1 (July 2, 1996) (defining "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The RFC constitutes a function-by-function evaluation, including both exertional and non-exertional factors, based on all relevant evidence in the case record. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *3–5. A claimant's RFC is an assessment of the most she can do despite her limitations or restrictions. *See* § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1. The ALJ is solely "responsible for determining an applicant's residual functional capacity." *Ripley*, 67 F.3d at 557 (citing § 404.1546). Nevertheless, the ALJ's RFC determination must be supported by substantial evidence. *Id.*

In *Ripley v. Chater*, the ALJ determined that the claimant had the RFC to perform sedentary work and was therefore not disabled. *Id.* On appeal, the claimant argued the ALJ's RFC determination was not supported by substantial evidence. *Id.* The Fifth Circuit noted the record contained a large amount of medical evidence establishing the claimant had a back problem, but despite the voluminous medical evidence, the record did not clearly establish the effect claimant's back problem had on his ability to work. *Id.* Thus, the court remanded the case with instructions that the ALJ obtain medical evidence from the claimant's treating physician regarding the impact claimant's back condition had on his capacity to work. *Id.* at 557–58. The court explained that substantial evidence did not support the ALJ's RFC determination because the court could not determine the effect the claimant's conditions, "no matter how 'small,'" had on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

Similarly, in *Williams v. Astrue*, the Fifth Circuit re-affirmed its decision in *Ripley*, explaining "that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." 355 F. App'x 828, 832 n.6 (5th Cir. 2009). The court explained that although the ALJ is entitled

to assign non-controlling weight to a treating physician's opinions, the ALJ's findings must still be supported by substantial evidence. *Id.* at 831–32. In making his determination, the "ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id.* at 832 n.6.

Here, at step three, the ALJ found that Plaintiff suffered from dozens of severe physical impairments, and that Plaintiff "also has established medically determinable impairments of somatic symptom disorder, major depressive disorder and generalized anxiety disorder," but only "[b]eginning August 2015." Tr. 46. The ALJ's resulting mental RFC determination consists of two distinct findings: (1) before August 2015, Plaintiff's mental impairments, if any, did not affect her ability to work;[6] and (2) as of August 2015, Plaintiff is "limited to jobs that would require understanding, remembering, and carrying out detailed tasks, but not complex tasks." Tr. 48 (incorporating no mental limitations in the RFC before August 2015 but finding some limitations "[b]eginning August 2015").

### C. Substantial evidence does not support the ALJ's mental RFC finding that as of August 2015 Plaintiff is "limited to jobs that would require understanding, remembering, and carrying out detailed tasks, but not complex tasks."

In this case, just as in *Ripley* and *Williams*, the ALJ's post-August 2015 mental RFC assessment is not supported by substantial evidence. Other than the SAMCs' reports, which do not inform the ALJ's mental RFC determination after August 2015, the record contains no medical opinion evidence as to the effect of Plaintiff's mental impairments on her ability to work. *See* Tr. 46, 48. The ALJ improperly derived this RFC finding from the raw data in the record,

---

[6] This finding is based on the ALJ's determination, at step two, that Plaintiff's mental impairments were non-severe prior to August 2015. Tr. 46. Plaintiff does not challenge the pre-August 2015 finding, and the court's analysis focuses exclusively on the ALJ's mental RFC finding that, beginning August 2015, Plaintiff is "limited to jobs that would require understanding, remembering, and carrying out detailed tasks, but not complex tasks." Tr. 48.

9

"succumb[ing] to the temptation to play doctor" rather than seeking out competent medical opinions. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Specifically, the ALJ accorded the SAMCs' opinions great weight "regarding the non-severe mental" finding, apparently relying exclusively on these opinions for her finding that Plaintiff's mental impairments did not exist *prior* to August 2015. *See* Tr. 53. The ALJ qualified her reliance on the SAMCs' opinions, however, by noting that "the records over past year show her pain and mental [sic] in combination do have some impact on her capacity to perform work-related activities." *Id.* The ALJ also noted a "psychological consultative examination" Plaintiff underwent on August 5, 2015, by Addison Gradel, EdD, which outlined some of Plaintiff's mental problems but did not include any statement—by a medical professional or otherwise—about the effects her mental problems had on her ability to work. Tr. 51–52, 887–92; *see* Tr. 53 (according the psychological consultative exam "some weight, although no specific work limitations were assigned"). The only other statements in the record concerning the effect Plaintiff's mental impairments had on her ability to work are her own reports and testimony, which the ALJ accorded "less weight." Tr. 53. The ALJ reasoned that because Plaintiff began mental health treatment while the case was in progress—not beforehand—and because her specific complaints in therapy focused on "family issues" and "worry about her workers comp case and finances," her allegations of mental impairments seemed less legitimate. *Id.* In addition, the ALJ found that Plaintiff's testimony and reports "are not entirely consistent with the medical evidence and other evidence in the record." Tr. 50.

After dismissing Plaintiff's testimony and reports, and without any support from medical opinion evidence, the ALJ conclusorily determined that Plaintiff's impairments allow her to perform as follows:

> [L]ifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools . . . She can frequently reach,

> handle, and finger. . . . **Beginning August 2015, the claimant is further limited to jobs that would require understanding, remembering, and carrying out detailed tasks, but not complex tasks.**

Tr. 48 (emphasis added). By imposing certain cognitive limitations, it appears the ALJ attempted to account for Plaintiff's somatic symptom disorder, major depressive disorder, and generalized anxiety disorder—each of which the ALJ found to be a severe impairment affecting Plaintiff "[b]eginning August 2015." *See* Tr. 46. The problem with such an approach is that the record lacks medical evidence to support such a determination, and violates the Fifth Circuit's holding in *Ripley*, even where doing so conceivably gives Plaintiff the benefit of the doubt. *See Thornhill v. Colvin*, No. 3:14–cv–335–M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (explaining that an ALJ cannot "independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities . . . even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply"), *R. & R. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015). Because the record does not contain any medical opinion evidence describing the effect Plaintiff's mental impairments have on her ability to work, the ALJ should have obtained a medical source opinion about the types of tasks Plaintiff can perform despite her impairments. *See id.* (citing *Ripley*, 67 F.3d at 557); *see also Montoya v. Berryhill*, No. 3:16-cv-1594-D-BN, 2017 WL 3835950, at *4 (N.D. Tex. Aug. 1, 2017) ("And it is improper for the ALJ to infer what [plaintiff's] capabilities to work are based on his own interpretation of these records—at least without the assistance of an examining or treating physician."). Instead, the ALJ improperly made an independent RFC finding.

The ALJ's reference to treatment notes by a treating psychologist and a separate consultative examination fails to remedy this deficiency. Despite citing such records as support for her conclusion that the RFC determination accounts for Plaintiff's mental impairments, none of the

cited medical records address how such impairments affect Plaintiff's ability to work. *See, e.g.*, Tr. 990–94 (On August 25, 2015, Plaintiff presented to Sarah J. Haley, Ph.D., a licensed psychologist, where Dr. Haley diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder, and noted that Plaintiff was seeking further treatment because her current medications were not helping; however, Dr. Haley did not document the impact of Plaintiff's conditions on her ability to work.); Tr. 998–99 (Plaintiff saw Dr. Haley again on September 28, 2015, complaining mainly of family and social problems. Dr. Haley noted that Plaintiff is "socially isolated" and that her "communication skills are limited," but again did not comment on the effect of these problems on her ability to work.); Tr. 1002–03 (Plaintiff spoke to Dr. Haley, mostly about specific problems with her family and the effects of her physical pain on her daily life. Dr. Haley noted that Plaintiff "has difficulty in her interpersonal relationships" and continues to struggle with significant physical pain, but did not evaluate how her impairments affect her ability to work.); Tr. 1006 (assessing Plaintiff's "multiple health problems, which likely contribute[] to both her anxiety and depression," in treatment notes from a November 17, 2015, visit, but not commenting on her ability to work); Tr. 1011–12 (In December 2015, Dr. Haley saw Plaintiff again and noted that her "depression appears to be worsening," but she did not document how Plaintiff's impairments would impact ability to work.); Tr. 1015–16 (In January 2016, Plaintiff again saw Dr. Haley, who noted that Plaintiff's "depression appears to be worsening with additional health problems" and physical pain; like the other treatment notes, however, this assessment does not include documentation of Plaintiff's ability to work.); *see also* Tr. 887–91 (consultative report by Addison Gradel, EdD, and Kristin Swoap, LPC, following a clinical interview and mental examination, diagnosing Plaintiff with somatic symptom disorder and persistent depressive disorder, and making certain findings about her mental health, but not commenting on how these impairments impact her ability to work).

"*Ripley* clarifies that an administrative law judge cannot determine from raw medical data effects of impairments on claimants' ability to work." *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006); *see Frank* 326 F.3d at 621–22 (noting that an ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help"); *Thornhill*, 2015 WL 232844, at *10 (remanding case where "the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability to work and relied on progress notes that do not themselves address Plaintiff's work limitations"). The ALJ must rely on medical opinion(s) in the record in order for her RFC determination to be supported by substantial evidence. *See Williams*, 355 F. App'x at 832 n.6 (noting that "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Knapp v. Colvin*, No. 3:13-CV-4396-K, 2015 WL 1181955, at *12 (N.D. Tex. Feb. 25, 2015), *R. & R. adopted*, 2015 WL 1181955 (N.D. Tex. Mar. 12, 2015). This is because "[c]ommon sense can mislead" and "lay intuitions about medical phenomena are often wrong." *Frank*, 326 F.3d at 622 (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Thus, the ALJ erred in this case in making an RFC determination without any medical opinions in the record that addressed the effects of Plaintiff's mental impairments on her ability to work. *See, e.g., McCullough v. Berryhill*, Civil No. SA-18-CV-00128-ESC, 2019 WL 1431124, at *14 (W.D. Tex. Mar. 29, 2019) (finding the ALJ's RFC determination was not supported by substantial evidence where the ALJ made the RFC determination without any medical opinions that "discuss the effects of Plaintiff's [impairment] upon his ability to work"); *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (collecting cases holding that the ALJ is not permitted to independently assess a claimant's RFC without medical evidence addressing the effects a claimant's impairments have on his or her ability

to work); *Montoya*, 2017 WL 3835950, at *5 (holding that the ALJ impermissibly derived his RFC determination from raw data in the record, not from the medical opinions of treating physicians).

In sum, the medical records the ALJ cited and apparently relied upon to determine Plaintiff's RFC amount to raw medical data. The records the ALJ cited demonstrate that Plaintiff suffers from a variety of ailments, but "[w]hat the record does not clearly establish is the effect" such impairments have on her ability to work. *Ripley*, 67 F.3d at 557. Without such medical opinion evidence in the record (other than the SAMCs' RFC determinations, which do not inform the ALJ's consideration of Plaintiff's mental state after August 2015), the court cannot conclude that substantial evidence supports the ALJ's RFC finding. *See id.* at 557 n.27; *see also Geason v. Colvin*, No. 3:14–CV–1353–N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence."); *Knapp*, 2015 WL 1181955, at *12 ("Besides Dr. Gill's [RFC assessment], there were no other medical opinions regarding the effects Plaintiff's medical impairments had on his ability to work. Accordingly, there is no medical evidence supporting the ALJ's RFC finding."); *Thornhill*, 2015 WL 232844, at *10 (concluding that substantial evidence did not support the ALJ's RFC finding because the court could not, based on the record, determine the effects plaintiff's impairments had on her ability to work).

### D. The ALJ's failure to seek medical opinion evidence concerning the impact of Plaintiff's mental impairments on her ability to work prejudiced Plaintiff.

The ALJ erred in making a mental RFC determination without medical opinion evidence in the record addressing the impact of Plaintiff's mental impairments on her ability to work, and substantial evidence does not support the RFC determination. Nevertheless, reversal is only warranted if the claimant shows that she was prejudiced by the error. "To establish prejudice, a

claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)); *see Ripley*, 67 F.3d at 557 n.22 (citing *Kane*, 731 F.2d at 1220) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."). Here, the fact that the ALJ did not rely on a medical opinion in determining Plaintiff's mental RFC raises doubts as to whether the ALJ might have reached a different conclusion had she fully developed the record. In addition, after the hearing before the ALJ, Plaintiff submitted a letter from treating physician Ashot Azatian, M.D., dated September 16, 2016, containing his opinion that Plaintiff cannot work "due to her medical and psychiatric conditions" and noting that her current antidepressant medication is not helping. Tr. 62. While this letter was not part of the record before the ALJ when she made her decision (*see* Tr. 24), it reinforces the court's finding that, if the ALJ had sought medical opinion evidence concerning the effects of Plaintiff's mental impairments on her ability to work, she may have found Plaintiff disabled. The court therefore concludes that the ALJ's failure to obtain medical opinion evidence regarding the effects Plaintiff's generalized anxiety disorder, major depressive disorder, and somatic symptom disorder have on her ability to work prejudiced her. Because the ALJ's RFC determination is not supported by substantial evidence, and because Plaintiff was prejudiced by such error, the court should remand.[7]

---

[7] The court does not reach Plaintiff's second or third point of error because it recommends remand as to the first.

## V. **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Judge vacate the Commissioner's decision and remand for further administrative proceedings consistent with the analysis herein.

## VI. **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 30, 2019

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE